Patrick McNicholas (SBN 125868)
*pmc@mcnicholaslaw.com*
Jeffrey R. Lamb (SBN 257648)
*jrl@mcnicholaslaw.com*
McNICHOLAS & McNICHOLAS, LLP
10866 Wilshire Blvd., Suite 1400
Los Angeles, California 90024
Tel:  (310) 474-1582
Fax:  (310) 475-7871

Brian E. Claypool (SBN 134674)
*brian@claypoollawfirm.com*
THE CLAYPOOL LAW FIRM
4 East Holly Street, Suite 201
Pasadena, California 91103
Tel:  (626)345-5480
Fax: (626)787-1042
Attorneys for *Relators*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATE OF CALIFORNIA *EX REL.* THOMAS REILLY, GARRETT LEE, KEVIN SCHMIDT, AND TERRY HILLARD,<br><br>Plaintiffs,<br><br>vs.<br><br>ADVENTIST HEALTH; et al.<br><br>Defendants. | CASE NO.: 1:17-CV-00613 AWI-SKO<br><br>**RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT**<br><br>Date:  November 18, 2019<br>Time:  1:30 p.m.<br>Dept.:  Courtroom 2<br>Judge:  Hon. Anthony W. Ishii |

COMES NOW RELATORS THOMAS REILLY, GARRETT LEE, KEVIN SCHMIDT, AND TERRY HILLARD and submit this MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT.

i

1    This opposition is based on the attached Memorandum of Points and Authorities and all

2    pleadings and papers on file and such other oral and documentary evidence as may be presented at

3    the hearing of the instant motion.

4

5    Dated:  November 4, 2019

6

7                                                      /S/  JEFFREY R. LAMB
                                                     PATRICK MCNICHOLAS
8                                                    BRIAN CLAYPOOL
                                                     JEFFREY R. LAMB
9                                                    Attorney for PLAINTIFFS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT**

### <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS ....................................................................1

III.    LEGAL STANDARD...........................................................................4

IV.     ARGUMENT........................................................................................5

      A.   The FAC Pleads Violations of the Federal and California False Claims
             Act with Particularity......................................................................5

          1.   The FAC Sufficiently Pleads Violations of the False Claims
                  Act

          2.   The FAC Sufficiently Alleges Defendants' Role in Submitting the
                  False Claims.........................................................................7

          3.   The FAC Sufficiently Alleges Causation ...........................8

      B.   The FAC Sufficiently Pleads a Violation of the Federal and California
             Anti-Kickback Statutes ...................................................................9

          1.   The FAC Alleges That PPA Was a Referring Source .........9

          2.   The FAC Alleges Renumeration.........................................10

          3.   The FAC Alleges a Link Between the Renumeration and the
                  Claims .................................................................................11

          4.   There is No "Obvious" Alternative Explanation for Defendants'
                  Conduct................................................................................11

      C.   In the Alternative, Relators Request That the Court Grant Leave to
             Amend.................................................................................................12

V.      CONCLUSION..................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F3d 912 (9th Cir. 2001) ....................................................................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..............................................................................4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..............................................................................4

*Bernheim v. Litt,*
  79 F3d 318 (2nd Cir. 1996)....................................................................4

*Broam v. Bogan,*
  320 F.3d 1023 (9th Cir. 2003) ...............................................................5

*Butler v. Los Angeles County,*
  617 F.Supp.2d 994 (C.D. Cal. 2008) ......................................................4

*Cafasso ex rel. United States v. General Dynamics C4 Sys.,*
  637 F.3d 1047 (9th Cir. 2011) ...........................................................5, 10

*California ex rel. Mueller v. Walgreen Corp.,*
  175 F.R.D. 638 (N.D.Cal.1997)...............................................................7

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997) .................................................................7

*De La Cruz v. Tormey,*
  582 F.2d 45 (9th Cir.1978) ....................................................................4

*Ebeid ex rel. U.S. v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010) ............................................................7, 13

*Enesco Corp. v. Price/Costco Inc.,*
  146 F.3d 1083 (9th Cir.1998) .................................................................4

*Foman v. Davis,*
  371 U.S. 178 (1962).............................................................................14

*Gabrielson v. Montgomery Ward & Co.,*
  785 F.2d 762 (9th Cir. 1986) ...............................................................14

*Gilligan v. Jamco Develop. Corp.,*
  108 F.3d 246 (9th Cir.1997) ..................................................................5

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ..................................................................................6

*Howey v. United States*,
   481 F.2d 1187 (9th Cir. 1973) ...............................................................................15

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ..................................................................6

*Lormand v. US Unwired, Inc.*,
   565 F3d 228 (5th Cir. 2009) ...................................................................................5

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ......................................................................................9

*Paulsen v. CNF, Inc.*,
   391 F.Supp.2d 804 (N.D. Cal 2005) ........................................................................4

*Schreiber Distrib. v. Serv-Well Furniture.*,
   806 F.2d 1393 (9th Cir. 1986) .............................................................................7, 9

*Sonoma County Ass'n of Retired Employees v. Sonoma County*,
   708 F.3d 1109 (9th Cir. 2013) ...............................................................................14

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
   551 U.S. 308 (2007)..................................................................................................6

*United States ex rel. Anthony v. Burke Eng'g Co.*, No. 00-1216, 2004 WL 2106621
   (C.D. Cal. Sept. 13, 2004)........................................................................................8

*United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*,
   865 F.3d 71 (2d Cir. 2017)........................................................................................7

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir.2001) ...................................................................................7

*United States ex rel. McCarthy v. Straub Clinic and Hosp., Inc.*,
   140 F.Supp.2d 1062 (D.Haw.2001)...........................................................................9

*United States ex rel. Silingo v. Wellpoint Inc.*,
   904 F.3d 667 (9th Cir. 2018) ....................................................................................9

*United States v. Safran Grp.*,
   2017 WL 235197 (N.D. Cal. Jan. 19, 2017)..............................................................7

*United States v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ..................................................................................14

1

## STATUTES

2

31 U.S.C. § 3729(a)(1)(A) ........................................................................................6, 10

3

31 U.S.C. § 3729(a)(1)(B) ...........................................................................................6

4

42 U.S.C. § 1320a–7a ................................................................................................12

5

42 U.S.C. § 1320a–7b(b) ...........................................................................................11

6

## RULES

7

8

Fed. R. Civ. P. 8(a)(2) ..................................................................................................4

9

Fed. R. Civ. P. 9(b) ......................................................................................................5

10

Fed. R. Civ. P. 12(b)(6)............................................................................................4, 5

11

Fed. R. Civ. P. 15(a) ..................................................................................................14

12

## PRACTICE GUIDES

13

14

*Rutter Group Practice Guide:*
     *Federal Civil Procedure Before Trial, Pleadings* ¶ 8:1461 ……………………………5

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT**

## I.      INTRODUCTION

In its Motion to Dismiss, Defendants ask the Court to dismiss this *qui tam* action against Defendants based primarily on the argument that Relators failed to state a plausible claim for relief and that Relators' allegations fail to satisfy Federal Rule of Civil Procedure 9(b).  Through their Motion to Dismiss, Defendants seek to evade responsibility for their scheme to make claims for payment for rendering services, based on induced referrals between Defendants, in violation of the False Claims Act and various Anti-Kickback Statues.

## II.      STATEMENT OF FACTS

At the heart of this lawsuit is an illegal kickback scheme, in which Defendants Adventist Health and San Joaquin Community Hospital (hereinafter "SJCH") used Premier Management Services Organization (hereinafter "PMSO") to provide discounted and/or unbilled and/or below-fair-market-value management services to Defendant Premier Physician Alliance, Inc. (hereinafter "PPA") in exchange for PPA referring inmate patients from the California Department of Corrections and Rehabilitation (hereinafter "CDCR") to SJCH.  At all times relevant, Defendants maintained prohibited financial relationships between themselves and paid kickbacks to each other in violation of various anti-kickback statutes.  (FAC ¶ 33.)  Defendants' kickback scheme flourished with the help of the creation of a sham corporation (PMSO) that, by its inception, acted to provide under-valued "management services" in exchange for patient referrals.  (FAC ¶ 33.)  In fact, PMSO had no employees, had no bank accounts, held no board meetings, and, perhaps most importantly, did nothing to actually "manage" PPA.  Instead, SJCH employees, through the kickback scheme, provided the management and oversight services to PPA that PMSO was allegedly providing. This scheme resulted in the referral of tens of thousands of inmate patients over at least an eight-year period from PPA to SJCH, which is owned by Defendant Adventist Health.  (FAC ¶ 33.)  Because PMSO was set up as a sham, because there was not written contract between PPA and PMSO, and because there was never any actual services provided by PMSO to PPA, the underlying patient referrals by PPA directly to SJCH were violative of federal and state anti-kickback statutes.  The submission of these claims to the government for reimbursement are fraudulent, pursuant to the California and Federal False Claims Act.

Relators allege that Defendant Adventist Health is a non-profit organization that owns and operates twenty hospitals, including Defendant SJCH. (FAC ¶ 13.) SJCH is located in Bakersfield, California, and it provides medical services to inmates in nearby state and federal prisons. (FAC ¶¶ 14, 106.) PPA is a physician-owned association that was responsible for billing the CDCR and the federal government for services rendered by physicians that were part of the PPA network. (FAC ¶ 15.) SJCH would bill the CDCR directly for the claims for its facility, and that is the main thrust of the entire scam and why SJCH wanted the claims referred to the physicians at their facility in the first place. This scam was such that SJCH received the patients and could then submit claims in upwards of hundreds of millions of dollars of facility fees on patients that were procured in exchange for kickbacks and, as a matter of law, at below fair market value.

In or around July 2006, PPA was created by several SJCH physicians and employees, including Defendants Donald Cornforth, Kurt Hoekendorf, and Raymond Zurcher. (FAC ¶ 38.) PPA was created primarily to contract with providers in order to facilitate the treatment of inmate patients at SJCH. (FAC ¶ 38.) Any physician or group that refused to contract with PPA was threatened with loss of staff privileges and termination of their contract with SJCH. (FAC ¶ 38.) On December 21, 2006, SJCH created PMSO, which was allegedly formed as a company that was to provide "management services," like administrative work, to SJCH. (FAC ¶ 40.) From its inception, PMSO had only one member[1], had no employees, existed without an Operating Agreement and bank account, had no client contracts, and never held a board meeting. (FAC ¶¶ 40, 44.) PMSO never operated as a bona fide entity: it was a sham corporation. (FAC ¶¶ 40–41.) In or around 2008, PMSO verbally contracted with PPA. (*See* FAC ¶ 42.) No written contract was executed until 2011. (FAC ¶ 42.) Even when that contract was entered into, it was done after the fraud had been exposed that PMSO was simply a sham company operating entirely under the umbrella of SJCH. Thus, even claims that were processed after the 2011 written contract (which

---

[1] The sole member of PMSO was SJCH. (FAC ¶ 40.) From 2008 to 2010, PPA's own financial ledgers evidence large-sum payments going from PPA to SJCH as opposed to from PPA to PMSO. (FAC ¶ 42.) As such, their identities are not independent of each other: PSMO was, in fact, SJCH.

2

1   was illegally backdated) are still fraudulent in that the contract was part and parcel of a fraud, and

2   PMSO has not received any payments for their alleged services as they have never had a bank

3   account.

4          The fact that no written agreement was in place until the end of 2011 is evidence that

5   PMSO did not establish that it was offering its services for fair market value as required by law.

6   (FAC ¶ 42.)  Further, when PMSO finally did enter into a formal, written agreement with PPA,

7   PMSO backdated the contract to coincide with the date that PPA contracted with CDCR,

8   evidencing PMSO's sinister motives and cover-up tactics.  (*See* FAC ¶ 42.)  PMSO's sole

9   existence was for the purpose of providing below-market-value services to PPA in exchange for

10  PPA to refer patients from CDCR to SJCH instead of competing hospitals.  (FAC ¶¶ 33, 94.)

11         On April 1, 2008, CDCR contracted with PPA.  (FAC ¶ 38.)  Under the contract, CDCR

12  would send inmate patients through PPA, who had the exclusive management ability to refer the

13  inmate patients to medical facilities.  Because of the nefarious agreement between PPA and PMSO,

14  PPA used its power under its contract with CDCR to send inmate patients to SJCH instead of the

15  competing nearby hospital, Mercy Bakersfield.  (FAC ¶¶ 33, 94, 105.)  Prior to the scheme set forth

16  herein, Mercy Bakersfield had been receiving a significant amount of CDCR inmates for treatment.

17  The scheme addressed in the FAC intended to, and specifically did, go after that business and

18  attempt to choke Mercy from any patients.  Further, the scheme was created in order for Adventist

19  Health to obtain exclusive control of the medical claims for inmates in the local area, a source of

20  significant profit that was guaranteed to pay.

21         After the inmate patients were treated, PPA would bill CDCR for the medical services

22  provided by the physicians.  (FAC ¶ 39.)  PPA submitted these claims to the government knowing

23  that the claims originated under a fraudulent kickback scheme.  (FAC ¶ 94.)  While the claims for

24  payment submitted to the government were legitimate (in the sense that PPA was billing the

25  appropriate price for services that were actually provided to inmates), because the billed claims

26  were the product of an illegal kickback scheme, the submission of the claims for payment

27  constitute a violation under the False Claims Act. (FAC ¶ 94.)  This is especially true for all of the

28

3

payments of facility fees claims made directly by SJCH to the CDCR.  All of those claims were procured as a result of this scheme and for below fair market value as required by law.

## III.   <u>LEGAL STANDARD</u>

A motion to dismiss brought under *Fed. R. Civ. P.* 12(b)(6) ("Rule 12(b)(6)") tests the legal sufficiency of a complaint. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978).  Accordingly, any defect must appear on the complaint's face.  In determining whether a defect appears, the court cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials).  *Arpin v. Santa Clara Valley Transp. Agency,* 261 F3d 912, 925 (9th Cir. 2001); *Butler v. Los Angeles County*, 617 F.Supp.2d 994, 999 (C.D. Cal. 2008) (citing text); *Paulsen v. CNF, Inc*., 391 F.Supp.2d 804, 807 (N.D. Cal 2005) (citing text).

When evaluating the sufficiency of Relators' FAC under 12(b)(6), the Court must be regardful that pursuant to the Federal Rules of Civil Procedure, only a "short and plain statement of the claim" supporting a *plausible claim* for relief is required.  *See Fed. R. Civ. P.* 8(a)(2).  In other words, the sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a plausible claim for relief.  *See* Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Attacking the Pleadings ¶ 9:216.  Thus, no matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 127 (2009); *Bernheim v. Litt*, 79 F3d 318, 321 (2nd Cir. 1996) (recovery may seem remote and unlikely on the face of the pleading, but that is not the test for dismissal.)

Detailed factual allegations in the compliant are not required to withstand a 12(b)(6) motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In addition**,** all allegations of material fact in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *See Enesco Corp. v. Price/Costco Inc*., 146 F.3d 1083, 1085 (9th Cir.1998) (citing *Argabright v. United States* (9th Cir.1994) 35 F.3d 472, 474 ). *Conley v. Gibson*, 355 U.S. 41 (1957), sets forth the strict standard for granting a Rule 12(b)(6) motion to dismiss.

Courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment. *See*

4

*Lormand v. US Unwired, Inc.*, 565 F3d 228, 232 (5th Cir. 2009) (Rule 12(b)(6) motions "viewed with disfavor and rarely granted"); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases).  In fact, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief then a Rule 12(b)(6) motion to dismiss must not be granted.

As the Ninth Circuit has observed, "The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir.1997).

As demonstrated throughout the instant opposition, the facts asserted in Relators' FAC, accepted as true, are sufficient to support, at the very least, a plausible claim for relief against Defendants on all three theories asserted.  Assuming arguendo there were ambiguities in Relators' pleading, which Relators does not concede, all ambiguities must be resolved in favor of the Relators, as Federal Courts strongly favor determination of cases on their merits.  *See Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Pleadings* ¶ 8:1461.

If this Court, for some reason, does determine Relators' pleading is ambiguous in any regard, given the limited role of pleadings in federal court, and that "leave to amend the pleadings is freely given," Relators respectfully request this Court allow them to amend their pleading to conform with the Court's ruling.  *See* Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Pleadings ¶ 8:1461.

## IV.  <u>ARGUMENT</u>

Taking the facts alleged in the FAC as true, together with the reasonable inferences from those facts, Relators have alleged more than sufficient facts to support Defendants' unlawful conduct as alleged in all eight Counts of the FAC. A complaint alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this standard, a complaint must describe the "who, what, when, where, and how of the misconduct." *Cafasso ex rel. United States v. General Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Finally, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a

defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *See, e.g., Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999.)

Under these standards, Defendants' Motion to Dismiss Relators' First Amended Complaint should be denied.

## A. The FAC Pleads Violations of the Federal and California False Claims Act with Particularity

The FAC alleges that Defendants violated the first two subsections of the FAC. (FAC ¶¶ 46–52.) Those sections impose liability on anyone who "(A) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government[.]" 31 U.S.C. § 3729(a)(1)(A)–(B).

Defendant's argue that the FAC fails to state a claim under the FCA for a myriad of reasons, simplified and summarized as follows: (1) the FAC does not allege the role of each Defendant in the submission of false claims; (2) the FAC fails for lack of causation; and (3) the FAC does not allege with particularity a referring source, that PPA received renumeration in exchange for referrals, and that a link exists between the referrals and the discounted services. (*See* Motion to Dismiss at 5:19–21, 7:7–8, 8:13, 9:17–19, 11:6–8.) Relators satisfactory alleged a claim for relief under the FCA, as discussed in turn below.

### 1. The FAC Sufficiently Pleads Violations of the False Claims Act

Relators sufficiently alleged that Defendants engaged in a fraudulent course of conduct to submit false claims to the government as the basis for their claims for violation of the California and Federal False Claims Act. Relators allege that Defendants created and used PMSO (a blatantly sham entity entirely controlled by SJCH) to provide kickbacks to Defendant PPA to induce referrals of inmate patients to Defendant SJCH, thereby submitting and causing the submission of

thousands and thousands of false claims. Defendants argue that the FAC fails to allege violations of the Federal and California FCA with particularity and must be dismissed pursuant to Rule 9(b).[2]

When alleging a scheme to submit false claims, a plaintiff must provide "reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010). Note that in the Ninth Circuit, the relator need not "identify representative examples of false claims to support every allegation." *Id.* In the Ninth Circuit, Rule 9(b) requires only that Relators' allegations "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).  There is no question that the scheme in question was complicated—it had to be in order to perfect the fraudulently billing of millions of dollars-worth of below-fair-market-value claims.  However, Relators' FAC walks through the parties and the scheme and how they worked together to perfect it and become the sole provider to the CDCR.

Rule 9(b) does not require that the complaint "describe in detail a single specific transaction."[3] *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (denying Rule 9(b) motion to dismiss where the complaint alleged a general scheme of improper revenue recognition in shipments to a variety of customers, without describing a specific shipment). Here, The FAC sufficiently alleges a scheme in which Defendant PPA referred inmates to Defendant SJCH who in turn provided services to Defendant PPA under fair market value and through the obviously sham entity PMSO. (FAC ¶ 33, 64, 94.) The FAC further alleges that the claims submitted to the

---

[2] Claims brought under the FCA must meet the heightened pleading requirements of Rule 9(b). *United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1052 (9th Cir.2001). Claims brought under the California FCA must also meet that standard. *California ex rel. Mueller v. Walgreen Corp.,* 175 F.R.D. 638, 639 (N.D.Cal.1997). As such, this section will apply the same analysis to Relators' claims under both the Federal and California FCA. *See United States v. Safran Grp.*, 2017 WL 235197, at *4 (N.D. Cal. Jan. 19, 2017).

[3] A complaint can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge. *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017).

---

government are considered fraudulent and false statements because they were the product of the illegal kickback scheme. (*Id.* at 94.) The FAC sufficiently alleges a general scheme of improper submission of claims without having to describe a specific submission thereof; as such, Relators' FAC should not be dismissed for want of particularized allegations. *See United States ex re. Anthony v. Burke Eng'g Co.*, No. 00-1216, 2004 WL 2106621, at *3 (C.D. Cal. Sept. 13, 2004) (finding Rule 9(b) satisfied where complaint claiming violations of the FCA and California FCA did not list any specific transactions but gave examples of false statements spanning a seven-year period).

Additionally, Relators sufficiently alleged the identities of each Defendant entity as required. The parties involved in the submission of false claims are sufficiently identified. The FAC alleges that Defendant Adventist Health controlled and controls Defendant SJCH and, as such, the two entities are not independent of each other (FAC ¶¶ 14, 34); that Defendant SJCH created PMSO, a sham company, to divert funds from PPA to SJCH (FAC ¶¶ 14, 44); and that Defendant PPA was responsible for billing the CDCR and federal government for services rendered (FAC ¶ 15).

Further, Relators sufficiently alleged the identities of all individual Defendants as to put them each on notice of the charges against them and, with particularity, Relators have detailed for this Court the scheme in which the Defendants were involved and which Relators complain.  The FAC alleges that Defendant Zurcher was the President of PPA and the founding member of PMSO, and that he approved the creation and implementation of the sham company (FAC¶¶ 35, 41); that Defendant Cornforth was the Chief of Staff at SJCH and Vice President and CEO of PPA, and that he had knowledge of the fraudulent activity occurring (FAC ¶¶ 35, 40–43, 86); and that Defendant Hoekendorf was the Regional Vice President at SJCH, Business Manager for PPA, and Board Member of PMSO, and that he approached Defendant Griffin to set up a system of paying Griffin to refer his patients to SJCH (FAC ¶¶ 35, 43, 84). Finally, the FAC alleges that Defendant Soper was the CFO for both SJCH and PMSO, and that he was aware that Defendant PMSO was a sham corporation with no bank account, funds, or revenue (FAC ¶¶ 35, 43); that Defendant Reiner was the CEO of Adventist Health and was involved in the illegal patient referral system, as evidenced

by an email between Beehler, Cornforth, and himself (FAC ¶¶ 35, 86); that Robert Beehler was the CEO for both SJCH and PMSO, and that it was his idea to contract PPA with PMSO (FAC¶¶ 35, 41); and that Defendant Griffin was a physician at CDCR who referred patients to SJCH pursuant to an illegal kickback scheme. (FAC ¶¶ 35, 87).

These allegations are "specific enough to give defendants notice of the particular misconduct which is alleged . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993); *see also United States ex rel. McCarthy v. Straub Clinic and Hosp., Inc.,* 140 F.Supp.2d 1062, 1068 (D.Haw.2001) (denying Rule 9(b) motion to dismiss FCA action even though "the Complaint does not match these specific examples [of false claims] with specific dates or people" and "discusses mostly common practices rather than specific dates and times of submission of false claims" because complaint alerted the defendants as to the charges against them).

## 2.   The FAC Sufficiently Alleges Defendants' Role in Submitting the False Claims

Defendants argue that the FAC fails to allege who at Adventist Health and SJCH directed the fraudulent scheme and how and fails to allege Defendant Beehler's, Defendant Reiner's, and Defendant Soper's involvement in the overall fraud. (Mot. at 6:1–3, 6:8–9, 6:14–17, and 6:21–24.) As mentioned above, Relators need not identify each Defendants' specific involvement in a scheme to submit false claims. *See Schreiber Distrib.,* 806 F.2d at 1401 (finding that a plaintiff need only allege the identities of the parties to the misrepresentation).

Nevertheless, Relators allegations do in fact identify Defendant Beehler's, Reiner's, and Soper's involvement in the scheme to submit false claims. (*See* Relator's Opp. at 5:5–10.) Even if the FAC does not identify each of these Defendants' specific involvement in the scheme, the Ninth Circuit held that a complaint need not distinguish between defendants who had the same role in an alleged scheme. In *United States ex rel. Silingo v. Wellpoint Inc.*, 904 F.3d 667, 678 (9th Cir. 2018), the Ninth Circuit drew an analogy to "chain" and "wheel" conspiracies, explaining that if a fraud scheme resembles a wheel conspiracy—where a defendant (the "hub") separately agrees with

two or more other members (the "spokes") to carry out similar tasks—then any "parallel actions" of the "spokes" can be addressed by collective allegations.

Here, Defendants Beehler, Reiner, and Soper are all "spokes" in the overall scheme to submit false claims to the government. As such, the FAC sufficiently alleges their involvement in the fraudulent activity and should not be dismissed for failing to allege their involvement with more particularity.

### 3.   The FAC Sufficiently Alleges Causation

Defendants argue that Relators' claim for violation of the Federal and California FCA fails for lack of causation because PPA's diversion of government funds from PPA to SJCH occurred after the government reimbursed PPA for claims submitted. (Mot. at 7:7–28.) Defendants' argument completely misses the mark in its interpretation of the FCA. The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." U.S.C. § 3729(a)(1)(A). The FCA attaches liability "not to the underlying fraudulent activity" but to the "claim for payment." *United States ex rel. Cafasso*, 637 F.3d at 1055.

It matters not that the diversion of government funds from PPA to SJCH occurred subsequent to the government's reimbursement.  The FAC plausibly and particularly pleads that Defendants' misconduct in implementing and participating in a kickback scheme in which PPA referred inmates to SJCH, who in turn provided services to PPA for under fair market value, caused the submission of false claims to the government for reimbursement. (FAC ¶¶ 64, 94.)

The causal chain here is as follows: (1) PMSO provided "management services" to PPA for fair below market value (zero value), (2) PPA referred inmate patients from CDCR exclusively to SJCH physicians that were members of PPA, (3) PPA sent the claims for reimbursement to the government for the physicians and SJCH sent them directly to the government for the facilities fees, (4) the government reimbursed PPA for the claims and/or directly to SJCH, and (5) PPA thereafter diverted the funds earmarked for the physicians to SJCH for the alleged management that PMSO was providing although it was really SJCH.  SJCH through its sham entity PMSO would then either write off and/or fail to bill for the "services" they were allegedly providing.  Indeed,

such fraudulent claims were not only foreseeable, they were an intended consequence of Defendants' illegal scheme. It makes no difference that diversion of funds to SJCH occurred after government reimbursement, because liability under the FCA attaches to the claim for payment, which obviously occurs before the diversion of funds. As such, the FAC should not be dismissed for failing to allege causation.

### B.  The FAC Sufficiently Pleads a Violation of the Federal and California Anti-Kickback Statutes

The Anti-Kickback Statute ("AKS") makes it a criminal offense to knowingly offer, solicit, or receive any renumeration to induce referrals of items or services reimbursable by a Federal healthcare program. 42 U.S.C. § 1320a–7b(b). Though it is not completely clear in their Motion, Defendants seem to challenge Relators' allegations under the AKS because Relators failed to allege a referring source, that PPA received renumeration, and that there is a link between the referrals and the discounted services. (Mot. at 8:13, 9:17–19, 10:19–21, 11:6–8.) Finally, Defendants argue that the FAC should be dismissed because its allegations give rise to an "obvious and alternative explanation" for the creation of PPA. (Mot. at 11:22–12:1.)  Each of these arguments are addressed below in turn.

### 1.  The FAC Alleges That PPA Was a Referring Source

As a threshold matter, it is important to note that Defendants did not, and cannot, cite to a single authoritative case supporting Defendant's argument that Relators are required to allege a particularized referring source at the pleading stage. Nevertheless, Relators did in fact adequately plead that PPA was a referring source for purposes of an AKS violation. (*See* FAC ¶¶ 64–67.) The FAC sufficiently alleges that PPA existed primarily to contract with providers to service prison inmates at SJCH. (FAC ¶ 38.) Further, the FAC alleges that any physician or group that refused to join and contract with PPA was threatened with loss of staff privileges and termination of their contract with SJCH. (FAC ¶ 38.)  As set forth in the FAC, the CDCR contracted with PPA to be the provider network for all of the inmate medical services.  Because physicians were threatened to join PPA or lose their staff privileges at SJCH, the totality of the scheme ensured that Adventist Health (through their hospital SJCH) would receive all of the CDCR medical claims.  When

1   inmates from CDCR needed medical treatment, the CDCR would contact PPA, who would refer

2   those inmates to directly and exclusively to SJCH. It is clear that PPA was the referring entity in

3   the scheme to send CDCR patients directly to SJCH.

4   **2.   The FAC Alleges Renumeration**

5   "Renumeration" includes "transfers of items or services for free or for other than fair

6   market value." 42 U.S.C. § 1320a–7a. The FAC clearly and specifically alleges that PMSO was

7   created as a sham corporation to provide management services to PPA at below market value in

8   exchange for PPA referring inmate patients from CDCR directly to SJCH. (FAC ¶ 33.)[4] PPA and

9   PMSO entered into a verbal agreement; in fact, there was no written contract in place at all for the

10  first three years that PMSO provided "management services" to PPA. (FAC ¶ 42.) Only in 2011, in

11  an attempt to cover up the illegal conduct discovered during the pendency of another lawsuit, did

12  PPA and PMSO enter into a written agreement. (FAC ¶ 42.) The fact that no written agreement

13  was in place until that time is evidence that fair market value for PMSO's "management services"

14  was never established. (FAC ¶ 42.)

15  Further, Relators more than sufficiently alleged that PMSO was providing services to PPA

16  for well below fair market value. PMSO had no bank account, no funds, and no incoming revenue.

17  (FAC ¶ 44.) The FAC alleges that in 2013, PMSO's income was negative $84,468.00. (FAC ¶ 44.)

18  Tax returns for 2014 show PMSO as having an annual income of negative $4,613.00. (FAC ¶ 44.)

19  If PPA had been compensating PMSO at fair market value, there would be no reason for PMSO's

20  annual income to be in the negatives. (FAC ¶ 44.) Defendants' request that Relators allege what in

21  fact constitutes fair market value for the "management services" that PMSO was allegedly

22  providing to PPA would require improper guesswork that is inappropriate. The fair market value

23  for such services can, and will, be established through discovery and expert testimony and in fact

24  would require proof by way of expert testimony.

25  //

26

27  _____

28  [4] PMSO was not independent of either Defendants Adventist Health, SJCH, or PPA. (FAC ¶ 44.)

**RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT**

### 3.   The FAC Alleges a Link Between the Renumeration and the Claims

The "link" between the discounted services and PPA's referral of inmate patients is clearly alleged and understood: (1) Defendants engaged in an illegal kickback scheme when they created a scheme to obtain all of the prisoner inmate medical servcies claims funneled to SJCH.  They did so by creating PPA with this intention and then securing for PPA a contract with the CDCR to be the provider network for all of the inmate medical services; (2) this scheme caused inmate-patient claims from CDCR to be funneled through PPA to SJCH, and (3) many, if not all, of these claims (predicated on an illegal scheme) were paid for or approved by the government.

Relators' allegations sufficiently raise an inference of both proximate and but-for causation. Such fraudulent claims were not only foreseeable, they were intended by Defendants as part of their illegal enrichment scheme.  As previously discussed, Relators must provide only "reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998–99. Relators need not "identify representative examples of false claims to support every allegation." *Id.*  Relators allegations are sufficient to overcome such a standard of pleading.

### 4.   There is No "Obvious" Alternative Explanation for Defendants' Conduct

Defendants finally argue that Relators' FAC should be dismissed because it gives rise to an "'obvious and alternative explanation'—that San Joaquin created PPA not to fraudulently induce referrals of inmate patients, but to expand its capability to provide needed services to local inmate patients." (Motion at 11:22–12:1.) While this is entertaining, that sounds like an argument for the jury and is not the basis for a Motion to Dismiss.  To that end, Defendants ask the Court to accept this unverified explanation as true, without any discovery, and Defendants fail to provide the explanation under oath.  While in a 12(b)(b)(6) motion to dismiss the Court is to accept all allegations of material fact in the complaint as true and construed in the light most favorable to the plaintiff, this Court has no such obligation in viewing the instant Motion's fanciful claims.

Requiring Relators to plead allegations opposing any and all "obvious and alternative" explanations proposed by Defendants would be tantamount to the quantum of proof required at trial.  Relators have sufficiently alleged the "who, what, when, where and how" of the misconduct,

13

and those allegations are sufficient to overcome Defendants' arguments at this stage of the litigation.

### C.  In the Alternative, Relators Request That the Court Grant Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that a party may amend their complaint once "as a matter of course" before a responsive pleading is served.  Fed. R. Civ. P. 15(a).  After that, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires."  *Id.*  Leave to amend lies "within the sound discretion of the trial court." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  The Ninth Circuit has noted "on several occasions . . . that the 'Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed]. R. Civ. P., by *freely granting leave to amend when justice so requires*.'"  *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986) (quoting *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)) (emphasis added).

As previously mentioned, federal policy strongly favors determination of cases on their merits. "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]'" *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (brackets in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, there is no evidence of undue delay, bad faith, or dilatory motive. To the extent this Court finds any defects in the pleadings as currently constituted, Realtors respectfully request the opportunity to cure deficiencies in a subsequent pleading. In that instance, there would be no prejudice to the opposing party.

///

14

V. **CONCLUSION**

For the foregoing reasons, the Court should deny in its entirety Defendants' Motion to Dismiss Relators' FAC. In the alternative, Relators respectfully request that the Court grant leave to amend.

Dated:  November 4, 2019

> /S/  JEFFREY R. LAMB
> PATRICK MCNICHOLAS
> BRIAN CLAYPOOL
> JEFFREY R. LAMB
> Attorney for PLAINTIFFS

15