1   LATHAM & WATKINS LLP
      Jason M. Ohta (Bar No. 211107)
2        *jason.ohta@lw.com*
      Marcus Curtis (Bar No. 307726)
3        *marcus.curtis@lw.com*
    12670 High Bluff Drive
4   San Diego, CA 92130-2071
    Telephone: +1.858.523.5400
5   Facsimile: +1.858.523.5450

6   *Attorneys for Defendants Adventist Health,*
    *San Joaquin Community Hospital, Robert*
7   *Beehler, Kurt Hoekendorf, Scott Reiner,*
    *and William Brent Soper*

8

9              **UNITED STATES DISTRICT COURT**

10            **EASTERN DISTRICT OF CALIFORNIA**

11

12  UNITED STATES and the STATE OF          Case No. 1:17-cv-00613-AWI-SKO
    CALIFORNIA, *ex rel.* THOMAS REILLY,
13  GARRETT LEE, KEVIN SCHMIDT, AND         **DEFENDANTS' REPLY IN SUPPORT**
    TERRY HILLIARD,                         **OF MOTION TO DISMISS RELATORS'**
14                                          **FIRST AMENDED COMPLAINT**
                      Plaintiffs,
15                                          Date:    November 18, 2019
                                            Time:    1:30 PM
16                                          Place:   Courtroom 2
                                            Judge:   The Honorable Anthony W. Ishii
17            v.

18  ADVENTIST HEALTH, *et al.*,

19                    Defendants.

20

21

22

23

24

25

26

27

28

1    I.    **INTRODUCTION**

2          Relators' opposition (ECF No. 36) cannot save what is, at bottom, a fatally misconceived

3    lawsuit.  Relators have now made clear that their first theory of False Claims Act ("FCA")

4    liability—that Defendants used PMSO as a "sham corporation" to unlawfully "divert" funds to

5    SJCH—has always been about their dispute with PPA over payments to their medical group, and

6    not about the submission of false claims to the government.  Relators have rightly abandoned this

7    erroneous theory.  Relators' remaining theory of FCA liability—that Defendants Adventist and

8    SJCH used PMSO to provide "kickbacks" to PPA in exchange for referrals of inmate patients—

9    is no less flawed.  For several reasons, the Court should dismiss these kickback-based FCA

10   claims, as well as the five other causes of action that Relators abandoned by not opposing

11   Defendants' arguments for dismissal.

12         *First*, Relators fail to adequately allege each Defendants' specific role in the alleged

13   kickback scheme.  Rule 9(b) does not permit a plaintiff to "lump multiple defendants together,"

14   but rather requires a plaintiff to plead separate allegations regarding each *individual* Defendants'

15   participation in the fraud.  Relators fail to do so here, most notably with regard to Defendants

16   Beehler, Soper, Reiner, and Zurcher.

17         *Second*, Relators fail to plausibly allege a "referring source," "remuneration," and a

18   "link" between the two, all of which are elements of a federal Anti-Kickback Statute ("AKS")

19   violation, which is the predicate for Relators' FCA claims.  Relators also fail to allege

20   "remuneration" and a "link" between remuneration and referrals with the particularity required

21   under Rule 9(b).

22         *Third*, Relators' allegations are implausible in light of the obvious alternative explanation

23   that Defendants were not engaged in a kickback scheme.  When assessing whether a complaint

24   states a plausible claim to relief, courts must consider alternative explanations to determine

25   whether a plaintiff has "nudged their claims across the line from conceivable to plausible."  *Bell*

26   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Relators have not done so.

27

28

1    *Finally*, Relators' claims for violations of the California AKS, the federal mail and wire

2    fraud statutes, federal antitrust law, California antitrust law, and the Civil Monetary Penalties

3    Law, should all be dismissed with prejudice because Relators have abandoned those claims.

4    **II.    LEGAL STANDARD**

5    In addition to stating a "plausible" claim to relief, a complaint for violation of the False

6    Claims Act must satisfy Rule 9(b)'s heightened pleading standard.  *Bly-Magee v. California*, 236

7    F.3d 1014, 1018 (9th Cir. 2001).  Under Rule 9(b), allegations of fraud must include

8    "particularized supporting detail" of the "circumstances constituting the fraud" to survive a

9    motion to dismiss.  *Id.*  One of the primary purposes of the Rule is to deter the filing of

10   complaints as a "fishing expedition for the discovery of unknown wrongs" and allow federal

11   courts to "smoke out" claims that lack an adequate factual basis.  *California ex rel. Heryford v.*

12   *Alliance Data Sys. Corp.*, 2018 WL 3197856, at *2 (E.D. Cal. June 26, 2018) (citation omitted).

13   The FCA claims alleged in this case, which rely on conclusory allegations of fraud without

14   supporting particularized detail, are precisely the type of claims that should be dismissed under

15   Rule 9(b).

16   **III.   ARGUMENT**

17   Defendants note at the outset that Relators have abandoned one of their two theories of

18   FCA liability—namely, that Defendants violated the FCA by setting up PMSO as a conduit for

19   diverting funds from PPA to SJCH.  FAC ¶ 44.  Defendants argued (Mot. at 7) that this

20   "diversion" theory failed for lack of causation.  Relators do not respond to this argument, but

21   instead emphasize (at 10) that their "kickback" theory of FCA liability sufficiently alleges

22   causation.  *Heraldez v. Bayview Loan Serv., LLC*, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15,

23   2016) ("Failure to oppose constitutes a waiver or abandonment of the issue.").

24   The fact that Relators have abandoned their "diversion" theory of FCA liability should

25   come as no surprise—that theory was clearly rooted in Relators' ongoing business dispute with

26   Defendant Zurcher in state court, where Relators claim that Zurcher and others used PMSO to

27   avoid paying Relators' medical group.  *See* FAC ¶ 42 (citing *Emergency Med. Servs. Grp. v.*

28   *Zurcher*, No. S-1500-CV-27930 (Kern Cty. Super. Ct. Feb. 16, 2011)).  But Relators'

1   abandonment of the theory is important to point out because it renders their allegations regarding

2   PMSO's status as a "sham company" and a "disregarded entity" completely irrelevant.  PMSO's

3   purported status as a pass-through entity simply has no bearing on whether the services that

4   PMSO allegedly provided constitute "remuneration" for "referrals" from PPA.  Once these

5   irrelevant allegations are set aside, the defects in Relators' kickback theory of FCA liability

6   become even more obvious.

7

8         **A.**     **Relators' FAC Fails to Adequately Allege Each Defendants' Specific Role in the Alleged Kickback Scheme**

9         Relators' undifferentiated listing of multiple entities and individuals alleged to have

10   participated in the kickback scheme does not satisfy Rule 9(b)'s particularity requirement.  As

11   this Court has explained, "Rule 9(b) does not allow a complaint to merely lump multiple

12   defendants together but requires plaintiffs to differentiate their allegations when suing more than

13   one defendant and inform each defendant separately of the allegations surrounding his alleged

14   participation in the fraud."  *Lopez v. JP Morgan Chase Bank, Nat'l Ass'n*, 2012 WL 2953065, at

15   *3 (E.D. Cal. July 19, 2012) (Ishii, J.) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984,

16   997-98 (9th Cir. 2011)).  To satisfy Rule 9(b) in a fraud suit involving multiple defendants, a

17   plaintiff must, at a minimum, "state[] clearly how each and every defendant is alleged to have"

18   participated in the fraud.  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011); *Corinthian*

19   *Colls.*, 655 F.3d at 998 ("In the context of a fraud suit involving multiple defendants, a plaintiff

20   must, at a minimum identify the role of each defendant in the alleged fraudulent scheme.").

21         As Defendants explain (Mot. at 6-7), the FAC fails to provide factual details regarding

22   Defendants Beehler, Soper, and Reiner's participation in the alleged fraud.  The most that

23   Relators have done with respect to these individual Defendants is (1) identify their position, and

24   (2) make assertions based on discovery from their state court lawsuit that, while possibly

25   relevant to that ongoing business dispute, have no relevance to pleading a fraudulent kickback

26   scheme.  Relators' allegations that Beehler had the "idea" that PPA contract with PMSO; that

27   Soper "did not pay attention" to PMSO operations; and that Reiner was on an email with Beehler

28   and Defendant Cornforth on which Defendant Griffin was discussed, simply do not suggest how

1    each Defendant was involved in the *fraud* alleged here—a kickback scheme by which PMSO

2    provided below fair market value "management services" to PPA in exchange for referral of

3    inmate patients.  Furthermore, given Relators' abandonment of their "diversion" theory, Relators

4    have not alleged how Defendant Zurcher participated in the alleged fraud because the only

5    allegations relevant to Zurcher are that he approved the creation of an agreement between PMSO

6    and PPA.  FAC ¶¶ 41-42.  Therefore, the FAC—or at least Defendants Beehler, Soper, Reiner,

7    and Zurcher—should be dismissed on this ground alone.

8         Relators argue (at 9) that their allegations are specific enough under *United States ex rel.*

9    *McCarthy v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 2d 1062 (D. Haw. 2001).  But *McCarthy*

10   actually reinforces the conclusion that Relators have failed to satisfy Rule 9(b).  In *McCarthy*,

11   the court found that plaintiffs' complaint was sufficient under Rule 9(b) because it provided

12   "detail about much of the fraud alleged," including "who allegedly committed or aided in the

13   fraud," "how" the fraud was committed, and "specific examples" of the fraudulent activity.  *Id.*

14   at 1068.  By contrast, here Relators have merely identified Beehler, Soper, Reiner, and Zurcher,

15   and made allegations regarding their awareness that PMSO was a "disregarded entity," a fact that

16   is irrelevant to the alleged kickback scheme.  *McCarthy* does not help Relators.

17        Relators also contend (at 9-10) that under *United States ex rel. Silingo v. Wellpoint Inc.*,

18   904 F.3d 667, 677 (9th Cir. 2018), their complaint "need not distinguish between defendants who

19   had the same role in an alleged scheme."  But Relators misread *Silingo*.  In *Silingo*, the Ninth

20   Circuit explained that "if a fraudulent scheme resembles a wheel conspiracy," with one

21   defendant acting as the "hub" and other defendants acting as the "spokes," "then any parallel

22   actions of the 'spokes' can be addressed by collective allegations."  *Id.* at 678.  That is not the

23   case here.  Relators merely allege that Beehler had the idea for PPA to contract with PMSO; that

24   Soper had a general awareness of PMSO's pass-through status; and that Reiner was on an email

25   with Beehler and Cornforth on which Dr. Griffin was discussed.  Even if these were allegations

26   of participation in a kickback scheme (they are not), they certainly are not allegations of

27   "precisely the same conduct" in the kickback scheme, as required under *Silingo*.  *Id.* at 678.

28   Furthermore, Relators have not even bothered to identify who might be the "hub" in the alleged

1 kickback scheme.  Therefore, Relators cannot state a claim using a "collective allegations"

2 theory, and their FAC should be dismissed.

3
4      **B.**     **Relators Have Not Alleged a Relevant "Referring" Source under the Anti-Kickback Statute**

5      Relators' opposition confirms that they cannot plausibly allege a relevant "referring"

6 source.  *Miller v. Abbott Labs.*, 648 F. App'x 555, 561 ("An important aspect of inducement

7 [under the AKS] is that the remuneration be directed towards an individual or entity *in a position*

8 *to generate Federal health care program business*.") (emphasis added).  Relators point to

9 paragraphs 64-67 of the FAC to argue that they adequately pled that PPA was a referring source,

10 but those very paragraphs allege only that SJCH provided kickbacks to PPA—they do not state

11 that PPA was "in a position to generate Federal health care program business."[1] *Guilfoile v.*

12 *Shields*, 913 F.3d 178, 189 (1st Cir. 2019) ("relevant considerations for identifying an unlawful

13 kickback include . . . whether the person being paid the alleged kickback is 'in a position to

14 generate Federal health care program business'").  Nor would such allegations make sense.

15 Relators' FAC (¶¶ 83-85, 105) leaves no doubt that the CDCR is the entity that decides where to

16 refer inmate patients—whether to the PPA network, Mercy Bakersfield, or elsewhere—not PPA.

17 Therefore, in light of their own allegations, Relators cannot plausibly allege that PPA was a

18 "referring" source for AKS purposes.  *See Aguirre v. County of Sacramento*, 2014 WL 996271,

19 at *11 (E.D. Cal. Mar. 13, 2014) (denying conclusory allegations where those allegations were

20 "contradicted by other allegations in the amended complaint"); *Wahl v. JP Morgan Chase Bank,*

21 *N.A.*, 2012 WL 13009120, at *3 (C.D. Cal. May 2, 2012) (noting that a conclusory assertion of

22 wrongdoing is not enough to state a plausible claim to relief "particularly where it is contradicted

23 by other allegations in the complaint").

24      Relators contend (at 11-12) that PPA was the referring entity because "[w]hen inmates

25 from CDCR needed medical treatment, the CDCR would contact PPA, who would refer those

26
27
28 [1] As Defendants point out in their motion to dismiss (at 11 n.7), Relators have not actually identified what "Federal health care program" is at issue in this case.

1  inmates . . . to SJCH." Setting aside the fact that this allegation is *not* in Relators' FAC,[2] and

2  that it is contradicted by Relators' allegations that CDCR makes the referrals, Relators' argument

3  confirms Defendants' point. There is no dispute that PPA contracted with the CDCR to provide

4  care to inmate patients, and that PPA's contracted physicians provided that care at SJCH. So an

5  allegation that the CDCR would "contact" PPA when certain inmates needed medical treatment

6  is nothing more than an allegation that the CDCR *referred* inmates to the PPA network of

7  physicians based at SJCH. In fact, the FAC makes clear that the CDCR *could* refer inmate

8  patients to Mercy Bakersfield (rather than to PPA) if it wanted to, *see* FAC ¶¶ 84, 105, which

9  confirms that referral was in the CDCR's discretion, not PPA's.

10      Accordingly, the Court should dismiss the FAC for failing to properly allege a referral

11  source under the AKS.

12

13  **C.   Relators Have Not Sufficiently Alleged "Remuneration" under the Anti-Kickback Statute**

14      Relators also fail to adequately plead that PPA received any "remuneration" under the

15  AKS. As Defendants explain (Mot. at 9-10) Relators allege only that PMSO provided PPA

16  unidentified "management services" for "under fair market value," which is not enough to satisfy

17  Rule 9(b)'s particularity requirement. *Health Choice Grp., LLC v. Bayer Corp.*, 2018 WL

18  3637381, at *34 (E.D. Tex. June 29, 2018) ("To allege the particulars of a scheme to offer

19  kickbacks, relators must sketch *how it was* that Defendant provided remuneration to its clients,

20

21  _____

22  [2] Although Relators now attempt to use their opposition to argue that PPA had referral authority over CDCR inmate patients (an argument that is both logically incoherent and contradicted by their complaint), that allegation cannot be relied upon to survive a motion to dismiss because

23  Relators did not make the allegation in their operative complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6)

24  dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Nguyen v. Cal. Prison Health*

25  *Serv.*, 2016 WL 4120747, at *2 (E.D. Cal. Aug. 3, 2016) (citing *Schneider* and declining to consider on a motion to dismiss "new allegations [raised] in opposition which were not included

26  in [the] first amended complaint"). The paragraphs that Relators point to as indicating that they adequately pled that PPA was a cognizable referring source (FAC ¶¶ 64-67) at most *assume* this

27  is the case—they are not factual allegations that PPA is such a source. *See Robinson v. Wells Fargo Home Mortg.*, 2016 WL 6524403, at *3 (N.D. Cal. Nov. 3, 2016) (explaining that "[t]he

28  court will not assume facts not alleged" when evaluating whether a complaint states a plausible claim to relief).

1   *the form* of that remuneration, *how and why* that remuneration would include new business, and

2   *how Defendant benefited* from the remuneration.") (emphasis added); *United States ex rel.*

3   *Forney v. Medtronic, Inc.*, 2017 WL 2653568, at *4 (E.D. Pa. June 19, 2017) (dismissing FCA

4   claim where relator "failed to allege with particularity" how the "free product support services"

5   provided by defendant constituted illegal remuneration under the AKS).  Nor do Relators provide

6   any means of assessing the value of the "management services" such that they can show

7   remuneration at the pleading stage.  Rather than address Defendants' legal authority on this point

8   (Mot. at 10-11), Relators simply ignore it.  *See, e.g.*, *United States ex rel. Gough v.*

9   *Eastwestproto, Inc.*, 2018 WL 6929332, at *8 (C.D. Cal. Oct. 24, 2018) (finding that relators did

10  not sufficiently demonstrate "remuneration" at the pleading stage where the complaint did not

11  plead the comparative market rates of the allegedly discounted services); *United States v. Ctr. for*

12  *Diagnostic Imaging*, 787 F. Supp. 2d 1213, 1223 (W.D. Wash. 2011) (concluding that plaintiffs

13  failed to allege that discounted services qualified as remuneration where they did not allege the

14  fair market value of those services).

15          Relators' only response is that the "services" must have qualified as "remuneration"

16  because PMSO had a negative annual income in 2013 and 2014.  Relators assert (at 12), "If PPA

17  had been compensating PMSO at fair market value, there would be no reason for PMSO's annual

18  income to be in the negatives."  This speculation cannot substitute for well-pleaded factual

19  allegations.  A corporation's net income is based on a number of inputs, and Relators provide no

20  reason why or how the income figures here, without more, would suggest anything about the

21  value of "services" that PMSO provided to PPA.  In fact, Relators claim (at 1) that "there was

22  never any actual services provided by PMSO to PPA," which completely forecloses the theory

23  that PMSO provided anything of "value" that could qualify as "remuneration."  *See United*

24  *States v. Chang*, 2017 WL 10544289, at *8 (C.D. Cal. July 25, 2017) (granting motion to dismiss

25  relators' claim for violation of the AKS and the FCA where the complaint failed to "sufficiently

26  allege[] the referring physicians' receipt of payment or other remuneration in exchange for

27  referrals").  Having failed to allege that PMSO provided anything of value, Relators cannot plead

28  remuneration and the FAC should be dismissed.

1

**D.  Relators Have Not Sufficiently Alleged a Link Between Remuneration and Referrals**

2

3    Relators' insistence (at 13) that they have "clearly alleged" a link between the alleged

4  remuneration and referrals suggests they have misconstrued the nature of their burden.  Relators

5  contend (at 13) that general allegations that Defendants engaged in an illegal kickback scheme

6  by creating PPA to contract with the CDCR are enough to infer the requisite link.  They are not.

7  To survive a motion to dismiss, it is not enough to allege facts that suggest "possible" fraud;

8  what is required are particular allegations that indicate "plausible" fraud.  *Ashcroft v. Iqbal*, 556

9  U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a

10 defendant's liability, it stops short of the line between possibility and plausibility of entitlement

11 to relief.").  Here, Relators offer only general allegations of a kickback scheme without

12 providing factual support connecting the alleged remuneration (which, in any event, is not

13 sufficiently alleged) to referrals.  Although Relators need not "identify representative examples

14 of false claims to support every allegation," Relators must provide "particular details" from

15 which the Court can reasonably infer a link between remuneration and referrals.  *See Ebeid ex*

16 *rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010).  Relators' allegations fail to

17 meet this burden.  *Health Choice*, 2018 WL 4026986, at *52 ("It is not enough for Relator to

18 portray the scheme and then summarily conclude that false claims were submitted.").  Thus, the

19 Court should dismiss the FAC for Relators' failure to adequately plead a link between

20 remuneration and referrals.

21

**E.  Relators' Allegations are Implausible in Light of Obvious Alternative Explanations**

22

23    Relators contend (at 13) that the Court is not permitted to take into account an "obvious

24 alternative explanation" at the motion to dismiss stage.  Relators are simply wrong.  "When

25 considering plausibility" to determine whether a complaint states a claim to relief, "courts *must*

26 also consider an 'obvious alternative explanation' for defendant's behavior."  *Eclectic Props. E.,*

27 *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (emphasis added); *Swenson*

28 *v. Amtrak*, 2015 WL 6447493, at *5 (E.D. Cal. Oct. 23, 2015) ("In the face of an 'obvious

1    alternative explanation' for the defendant's conduct, a complaint must be dismissed."). This

2    consideration is key to assessing whether the "[f]actual allegations [are] enough to raise a right to

3    relief above a speculative level." *Eclectic Props.*, 751 F.3d at 995. As the Supreme Court

4    explained in *Iqbal*, "Where a complaint pleads facts that are merely consistent with a defendant's

5    liability, it stops short of the line between possibility and plausibility of entitlement to relief."

6    556 U.S. at 678.

7         Here, the alternative explanations are cogent and obvious to the point of rendering

8    Relators' claims pure speculation. Both sides acknowledge that SJCH organized physicians to

9    create PPA as a means of expanding its capability to provide needed services to local inmate

10   patients, *see* FAC ¶ 15; Mot. at 11, and none of Relators' allegations "tend[] to exclude the

11   possibility that the alternative explanation is true." *Eclectic Props.*, 751 F.3d at 996-97.

12   Relators' newfound focus on PMSO's balance sheet does not change this analysis. Not only

13   does PMSO's negative income in 2013 and 2014 fail to suggest fraud, it is entirely consistent

14   with the "innocuous alternative explanation," *id.* at 998, that Relators themselves acknowledge in

15   their FAC: that PMSO was a "disregarded entity." FAC ¶ 44. In light of Relators' threadbare

16   allegations, and the obvious alternative explanation that there was no fraudulent kickback

17   scheme, Relators have not "nudged their claims across the line from conceivable to plausible."

18   *Twombly*, 550 U.S. at 570. Their FAC should be dismissed.

19

20   **F.    The Court Should Dismiss With Prejudice Counts IV through VIII of Relators' FAC**

21        Relators' FAC asserts eight counts, including claims for violations of the California AKS

22   (Count IV), the federal mail and wire fraud statutes (Count V), federal antitrust law (Count VI),

23   California antitrust law (Count VII), and the Civil Monetary Penalties Law (Count VIII). But

24   Relators have not opposed Defendants' arguments (Mot. at 12-18) for dismissal of those counts,

25   opting instead to maintain only their claims for violation of the federal FCA (Count I), the

26   California FCA (Count II), and the Federal Anti-Kickback Statute (Count III).[3] By failing to

27   _____

28   [3] As Defendants explain in their motion to dismiss (at 8 n.6), to the extent Relators bring a standalone cause of action under the federal AKS, that claim fails for lack of statutory standing.

1   respond to Defendants' arguments for dismissal of the claims pled in Counts IV through VIII,

2   Relators have abandoned those claims, and the Court should dismiss them with prejudice.[4]  *Hild*

3   *v. Bank of Am., N.A.*, 2018 WL 6314183, at *8 (C.D. Cal. Aug. 10, 2018) (interpreting plaintiffs'

4   failure to respond to defendants' argument for dismissal of a claim as abandonment of that claim

5   and dismissing without leave to amend); *Nuezca v. Capital One Fin. Corp.*, 2014 WL 573882, at

6   *5 (N.D. Cal. Feb. 12, 2014) (construing plaintiffs' failure to respond to defendants' motion to

7   dismiss a cause of action as abandonment of that cause of action and dismissing with prejudice);

8   *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs

9   fail to provide a defense for a claim in opposition, the claim is deemed waived.").

10   **IV.    CONCLUSION**

11          For the foregoing reasons, and the reasons outlined in Defendants' Motion to Dismiss

12   (ECF No. 35-1), the Court should dismiss Relators' First Amended Complaint in its entirety.

13

14   Dated:  November 11, 2019                    Respectfully submitted,

15

16                                               LATHAM & WATKINS LLP

17                                               By: /s/ Jason M. Ohta
                                                     Jason M. Ohta

18                                                   Marcus Curtis

19                                               *Attorneys for Defendants Adventist Health,*

20                                               *San Joaquin Community Hospital,*
                                                 *Robert Beehler, Kurt Hoekendorf,*

21                                               *Scott Reiner, and William Brent Soper*

22

23

24

25   *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 37
     (D.D.C. 2003) ("There is no private right of action under the Anti-Kickback Act.").

26
     [4] This includes allegations that Defendants Hoekendorf and Griffin engaged in a separate
27   kickback scheme that violated the California AKS.  Relators' FAC carefully separated this
     alleged "secondary" scheme from their core False Claims Act causes of action, opting to allege it
28   as Count IV.  *See* FAC ¶¶ 79-90.  Relators have not opposed Defendants' arguments for
     dismissal of this cause of action.